(No. 45990.—

ROBERT GLIDDEN, Indiv. and as Admr., Appellant, v. THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Appellee.

*Opinion filed May 29, 1974.*

Yalden & Ridings, of Rockford (Craig A. Ridings, of counsel), for appellant.

Maynard & Brassfield, of Rockford (Eugene E. Brassfield, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The plaintiff, Robert Glidden, sued in the circuit court of Winnebago County for a declaratory judgment against the defendant, The Farmers Automobile Insurance Association, his insurer, to construe the limits of coverage under three certain automobile liability insurance policies issued to the plaintiff, covering three separate vehicles. Part IV of each policy offered uninsured-motorist coverage in the amount of $10,000 per person and $20,000 per accident, and Part II of each policy provided medical-payment coverage in the amount of $2,000 per person. The plaintiff's wife, while a pedestrian, was struck and killed by an uninsured motorist.

It is the plaintiff's contention that he is entitled to recover up to $30,000, *i.e.,* $10,000 under the uninsured-motorist provisions of each policy, without limitation by reason of the "other insurance" provisions, and also that he is entitled to recover up to $6,000 under Part II, the medical-payment provision of the three policies. The defendant contends that under the provisions of the three policies the plaintiff is limited to a total recovery of $10,000 under Part IV of his coverage, and $2,000 under Part II, the medical-payment provision under the three policies. The defendant further contends that payments made under the medical-payment provisions, Part II, must be set off against the payments to be made under the uninsured-motorist coverage under Part IV.

The defendant also contends that it is entitled to subrogation rights under the provisions of its policies applicable to payments made for uninsured-motorist coverage. Lastly, the plaintiff contends that he is entitled to the recovery of attorney's fees from the defendant.

The trial court determined all issues adversely to the

plaintiff. The appellate court (11 Ill. App. 3d 81 (1973)) held that the plaintiff is limited to a maximum recovery of $10,000 under Part IV of the uninsured-motorist provisions of the three policies; that the plaintiff is not so limited with respect to the medical-payment coverage under Part II of the three policies, and that he could recover a total of $6,000 thereunder; that the monies paid out under the medical-payment provisions of Part II are not automatically to be credited against the uninsured-motorist payments under Part IV; that the defendant is entitled to subrogation from the proceeds of any settlement or judgment resulting from the exercise of rights of recovery of the insured against the person or organization responsible for the injury to the extent of payment made by the insurer to the insured; and that the plaintiff is not entitled to the recovery of fees.

The primary issue of this appeal is whether the plaintiff is limited to a maximum recovery of $10,000 under Part IV of the three policies providing uninsured-motorist coverage, or a total of $30,000. The policies contain the usual provisions: that if there is "other insurance" (1) the coverage is "excess insurance" over similar coverage if the insured is occupying an automobile not owned by him, and (2) in all other situations the exposure is limited to the payment only of the *pro rata* portion of the loss represented by the ratio of the limits of uninsured-motorist coverage provided by the particular policy to the total of all such coverage available to the insured, and the total damages are deemed to be no greater than the highest limit in an applicable policy.

Specifically, the policies state:

> *"Other Insurance:* With respect to Bodily Injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limits of liability

for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The first limitation, referring to "excess insurance," is not applicable here because the insured (plaintiff's wife) was not occupying an automobile at the time of the accident in question. The question which arises is the effect of the second paragraph of the above "other insurance" provision, in this factual setting.

If the above clause is interpreted literally, it appears that the defendant's contention is correct. Each policy states that if there is other insurance which also provides uninsured-motorist coverage, then the liability of the insurer is limited to its *pro rata* share of such coverage. Here, there are three policies, each providing $10,000 of such coverage, or a total of $30,000. The exposure under each policy would thus be one third of the $10,000 limit, or $3,333.33.

A majority of courts (see Annot. (1969), 28 A.L.R.3d 551, at 559 *et seq.*) have rejected such a literal interpretation, primarily under the theory that the result is contrary to the public policy expressed in the "Uninsured Motorist" statute of the particular State. Like the comparable statute in Illinois, those "Uninsured Motorist" statutes generally have provided that no automobile liability insurance policy shall be issued unless it provides uninsured-motorist coverage in the limits expressed in the Financial Responsibility Law ($10,000 per person, $20,000 per accident).

These courts have stated that the statutory language

of the "Uninsured Motorist" statutes is plain, unambiguous and *mandatory* in providing that no insurance "policy *** shall be renewed or delivered or issued *** unless coverage is provided therein *** in limits *** set forth [in the Financial Responsibility Law]." (See Ill. Rev. Stat. 1969, ch. 73, par. 755a(1).) This line of authority concludes that *each policy* must contain the specified coverage; and that the proration provisions of the uninsured-motorist clauses, being contrary to the policy expressed in the controlling statutory language, must be judicially rejected. *Van Tassel v. Horace Mann Insurance Co.* (Minn. 1973), 207 N.W.2d 348; *Blakeslee v. Farm Bureau Mutual Insurance Co.* (1972), 388 Mich. 464, 201 N.W.2d 786; *Protective Fire & Casualty Co. v. Woten* (1970), 186 Neb. 212, 181 N.W.2d 835; *Sellers v. United States Fidelity & Guaranty Co.* (Fla. 1966), 185 So. 2d 689.

However, there is a clear division of authority on this question. (See Annot. (1969), 28 A.L.R.3d 551.) We are not compelled to follow the majority view, and under the facts in the following cases, we have rejected the rationale expressed by that view. (*Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill.2d 234; *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill.2d 71.) In both *Morelock* and *Putnam* we held that the public policy expressed by our uninsured-motorist statute is that the insured be provided coverage which would compensate him, in event of injury by an uninsured motorist, to at least the same extent as had he been injured by a motorist who was insured in compliance with the Financial Responsibility Law. In *Morelock,* at page 239, we stated that "the 'other insurance' clause does not frustrate the legislative purpose and thereby violate public policy ***."

There is, however, a distinguishing factor in this case. Here one insurer issued three different policies on three separate vehicles to one insured. Each policy provided separate uninsured-motorist coverage under Part IV, and

medical-payments coverage under Part II, and a separate premium was accepted by the insurer from the insured for those coverages. An insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued. *Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 415.

When an insured purchases three distinct policies from an insurer, each providing the specified coverage, and pays a separate premium for each, does he reasonably contemplate that the "other insurance" clauses therein are effective to reduce his recovery to what he would have obtained under one policy? We think not. The apparent purpose of "other insurance" clauses is to make certain that one company does not pay a disproportionate amount of a loss which is to be shared with another company. There is no purpose in proration unless the "other insurance" is written by another company. The clause has no meaningful purpose when applied to coverage issued by one company to one insured. In this situation its meaning is ambiguous, and the clause should be construed in favor of the insured. *United Services Automobile Association v. Dokter* (1970), 86 Nev. 917, 920, 478 P.2d 583, 585; *Sturdy v. Allied Mutual Insurance Co.* (1969), 203 Kan. 783, 457 P.2d 34; see also *Deterding v. State Farm Mutual Automobile Insurance Co.* (1966), 78 Ill. App. 2d 29, 36.

It is true that an insured might end up in a case such as this in a better situation than if the wrongdoer had been insured to the minimum requirements of the Financial Responsibility Law. That, however, is not material as long as he pays for the coverage. The insured is better off because he paid additional premiums. If there is to be a "windfall" in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them. (See Widiss, Perspectives on Unin-

sured Motorist Coverage, 62 Nw. U.L. Rev. 497, 523 (1967).) We conclude that the plaintiff is entitled to recover up to $30,000 under the three uninsured-motorist coverages, not to exceed, however, the total damages sustained.

Regarding the medical-payment provisions and the question of whether the plaintiff may recover up to $6,000 under all three policies, or be limited to the $2,000 coverage of one policy, the "other insurance" clause under this coverage provides:

> "If there is other automobile medical payments insurance against a loss covered by Part II of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."

The above comments with respect to the uninsured-motorist "other insurance" provision are equally applicable to the medical-payment coverage. The plaintiff also paid three separate premiums for the medical-payment coverage in each policy. It would be unconscionable to permit the single insurer to issue the three coverages to the insured, collect the premiums therefor, and contend the "other insurance" clause bars recovery of more than the limit expressed in one policy. We also note that this "other insurance" clause is only a *pro rata* clause and does not expressly limit the total recovery to the highest limit in any one policy. The plaintiff may recover up to $6,000 under the three policies, not to exceed, however, the total damages sustained.

As to the question of whether the payments made under the medical-payment provisions of a policy are to be set off against the payments to be made under the uninsured-motorist provisions, the appellate court held

that its decision in *Melson v. Illinois National Insurance Co.* (1971), 1 Ill. App. 3d 1025, was to be followed. In that case, at page 1028, the appellate court stated that "where the total proven or undisputed damages incurred by the insured are greater than the combined total of uninsured motorist and medical coverage, the crediting provision cannot apply." Setoffs are to apply only where necessary to prevent double exposure for medical payments. We agree with that conclusion.

If the crediting provisions were to apply in all situations, including those where the total damages suffered by the insured exceed the combined total uninsured-motorist and medical-payment coverages, the net result would be that the uninsured-motorist coverage under the policy would not assure compensation comparable to that available if the insured had been injured by one insured in compliance with the Financial Responsibility Law. Such an interpretation would run afoul of the minimum coverage required under our decisions in *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill.2d 234, and *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill.2d 71.

The uninsured-motorist clauses of the policies provide that to the extent the company makes any payments thereunder, it is subrogated to the rights of the insured to any proceeds recovered from one legally responsible for the injury. The appellate court held that the insurer was entitled to such subrogation, and cited *Remsen v. Midway Liquors, Inc.* (1961), 30 Ill. App. 2d 132. In the instant case, the plaintiff had pending an independent dramshop action. The trial court held that the defendant company, to the extent of payments made under the uninsured-motorist coverage, was subrogated to any monies recovered by the plaintiff in that action. We believe that the insurer should be subrogated to any monies recovered from the uninsured tortfeasor and under the dramshop action.

As to the plaintiff's right to attorney's fees, we believe the appellate court correct in holding that the defendant was within its rights in refusing to arbitrate issues of liability and damages prior to the question of coverage being settled by the courts. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill.2d 91.) The questions of coverage in this case were complex. The conduct of the defendant was not vexatious or without reasonable cause (Ill. Rev. Stat. 1969, ch. 73, par. 767), and the refusal to allow fees was proper.

The judgments of the trial court and of the appellate court are affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings not inconsistent herewith.

*Affirmed in part and reversed*
*in part and remanded.*