**GRANITE STATE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Gerald A. DEGERLIA and Linda Deerhake, Special Administrator of the Estate of Kevin Deerhake, deceased, Defendants–Appellants.**

**Nos. 90–1843, 90–1844.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1991.

Decided Feb. 14, 1991.

Terrence J. Goggin, Mark R. Misiorowski, Goggin, Cutler & Hull, Chicago, Ill., William J. Selinsky, Randall Phillips, Ronald Olzmann, Marilyn A. Madorsky, Marc Shaberman, Provizer, Lichtenstein, Pearlman & Phillips, Southfield, Mich., for Granite State Ins. Co.

Robert S. Forbes, Philip B. Alfeld, Phillip J. Kardis, Kardis, Forbes & Alfeld, Alton, Ill., Terry N. Brown, Belleville, Ill., for Gerald A. Degerlia.

Bernard J. Ysursa, Cook, Shevlin, Keefe & Ysursa, Belleville, Ill., for Linda Deerhake, Special Administrator of the Estate of Kevin Deerhake, deceased.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

On July 27, 1980, patrons gathered at the DuQuoin State Fairgrounds ("Fairgrounds") in DuQuoin, Illinois, for a motorcycle race sponsored by the American Motorcycle Association ("AMA"). The sponsored race was canceled due to inclement weather, but many of the patrons remained to either watch or participate in the unsponsored and unauthorized "racing or stunting" of motorcycles. That activity ended tragically when a motorcycle accident injured Gerald Degerlia and cost Kevin Deerhake his life.

At the time of the accident, the DuQuoin State Fair Association ("Association"), which leased the Fairgrounds to the AMA, maintained four levels of liability coverage with the following limits of liability:

| Insurer | Limit of Liability |
| --- | --- |
| National Union Insurance Company | $300,000 |
| Lexington Insurance Company | $700,000 |
| Integrity Insurance Company | $1,000,000 |
| Granite State Insurance Company | $3,000,000 |

The uppermost layer of coverage, an excess umbrella liability policy issued by Granite State, included the following exclusion:

It is agreed that with respect to operations described above or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured.

It is agreed that the insurance applies with respect to the operation of any fair out of doors subject to the following additional exclusions:

The insurance does not apply:

1. to bodily injury or property damage arising out of

 (a) mechanically operated amusement devices owned or operated by the named insured.

 (b) automobile or motorcycle racing or stunting.

 (c) rodeos, or

2. to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or

sports nature sponsored by the names [sic] insured.[1]

The Association also procured an additional policy from Lincoln Insurance Company to provide coverage for the AMA-sanctioned motorcycle competition scheduled to take place on July 27, 1980.

After the accident, both Degerlia and Linda Deerhake, the special administrator of Kevin Deerhake's estate, filed suit against a number of defendants, including the Association. These actions were consolidated and produced jury verdicts of $770,000 for Degerlia and $1,757,510 for Deerhake. The only remaining obstacle was collecting the sums awarded by the jury, and the Association's liability coverage provided an attractive means by which to accomplish this goal.

Well aware of the possibility that Degerlia and Deerhake might attempt to collect under the Association's policies, Granite State and Lexington invoked our diversity jurisdiction and filed the present declaratory judgment action.[2] Granite State thereafter filed a motion for summary judgment raising the argument, among others, that the injuries suffered by Degerlia and Deerhake were expressly excluded by its policy. The district court, after examining the exclusion quoted above, agreed with Granite State, granted its motion for summary judgment, and, seeing no just reason for delay, directed entry of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.[3] Degerlia and Deerhake subsequently filed separate notices of appeal after the district court rejected their motions for reconsideration.

The question presented by this appeal is quite narrow. Both Degerlia and Deerhake do not contest, and thereby concede, that the injuries for which they seek compensation arose out of "motorcycle racing or stunting" that occurred "with respect to the operation of any fair out of doors." *Compare Garriguenc v. Love*, 67 Wis.2d 130, 226 N.W.2d 414 (1975). They also concede that the exclusion does not violate public policy. The only issue they raise is whether the district court, within the context of a motion for summary judgment, committed reversible error by failing to conclude that the exclusion applied only to "racing or stunting" *sponsored by the Association*. If their argument is correct, then the exclusion would be inapplicable to these facts—Degerlia's and Deerhake's injuries arose out of *unsponsored* "racing or stunting."[4]

■ Under Illinois law, which the parties concede applies to this action, we interpret the language of an insurance policy as a matter of law. *Sawyer Fruit & Veg. Co-op. Corp. v. Lumbermens Mut. Cas. Co.*, 117 Ill.App.3d 407, 408, 453 N.E.2d 826, 827, 73 Ill.Dec. 1, 2 (1st Dist.1983). On one end of a spectrum we place that policy language that is clearly and unambiguously in favor of coverage. At the other end of the spectrum we place that policy language that clearly and unambiguously excludes coverage. If the relevant language in the Granite State policy falls at either end of the spectrum—i.e., if it is subject to only one reasonable interpretation—then we apply the terms of the policy as written. *See Severs v. Country Mut. Ins. Co.*, 89 Ill.2d 515, 521, 434 N.E.2d 290, 292, 61 Ill.Dec. 137, 139 (1982); *see also National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir.1987) ("an insurance policy that contains no ambiguity is to be

---

1. The exclusion was adopted from the underlying umbrella policy issued by Integrity.

2. The defendants in the declaratory judgment action included the Association, Degerlia, and Deerhake, as well as First Bank and Trust Company of Mt. Vernon, Illinois (a trustee), and Saad Jabr.

 The record is sketchy with regard to the activities of the remaining insurers. Degerlia and Deerhake represent that National Union has made payments under its policy. Integrity has apparently been placed into receivership. And we are unable to discern Lincoln's present status with regard to the events herein.

3. Lexington's policy did not include the exclusion under scrutiny in this case.

4. We review de novo a district court's decision to grant a motion for summary judgment and apply the same standard as that employed by the district court. *DeBruyne v. Equitable Life Assur. Soc'y of the United States*, 920 F.2d 457, 463 (7th Cir.1990); *see also* FED.R.CIV.P. 56.

construed according to the plain and ordinary meaning of its terms, just as would any other contract"). If the relevant language in the Granite State policy is ambiguous and falls between the two ends of the spectrum—i.e., if it is subject to more than one reasonable interpretation, at least one of which would favor coverage—then we construe the policy strictly against its drafter, the insurer. *Goldblatt Bros., Inc. v. Home Indem. Co.*, 773 F.2d 121, 125 (7th Cir.1985). Thus, Granite State can prevail on its motion for summary judgment only if its exclusion cannot be reasonably interpreted to favor coverage.

■ As the district court held, the language in the Granite State exclusion meets this heavy burden.[5] The policy excludes injuries arising out of "automobile or motorcycle racing or stunting." The terms of the exclusion do not limit themselves only to injuries arising from racing or stunting *sponsored by the named insured.*

An examination of the remainder of the exclusion confirms this conclusion; the Granite State policy is quite specific when it qualifies the scope of its clauses. The first paragraph of the exclusion limits itself to "any contest or exhibition of an athletic or sports nature *sponsored by the named insured.*"[6] In the paragraph under scrutiny, the portion designated "(a)" limits itself to injury arising out of "mechanically operated amusement devices *owned or operated by the named insured.*" Last, the portion designated "2" limits itself to "any contest or exhibition of an athletic or sports nature *sponsored by*

*the names* [sic] *insured."* These express limitations, occurring both before and after, but not within, the language under scrutiny, strongly support the determination that no coverage exists.

■ Our analysis does not end, however, with the four corners of the insurance policy. Under Illinois law, "[a]n insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the insurance contract might not be such in the factual setting in which the contract was issued." *See, e.g., Glidden v. Farmers Auto. Ins. Ass'n*, 57 Ill.2d 330, 336, 312 N.E.2d 247, 250 (1974).

Seizing upon this language in *Glidden*, Degerlia and Deerhake note that the Association purchased outside coverage for the AMA–sanctioned "racing or stunting" but did not purchase outside coverage for unsponsored motorcycle "racing or stunting." They then argue, on the basis of the Association's conduct, that it intended and believed the Granite State exclusion to apply only to activities for which outside coverage had been procured—i.e., sponsored "racing or stunting." If the Association had not intended the Granite State policy to cover unsponsored "racing or stunting," Degerlia and Deerhake argue, the Association would have procured outside coverage for those activities.[7]

■ While we recognize the apparent willingness of Illinois courts to look beyond the four corners of the insurance policy in determining the meaning of a particular

---

5. Deerhake's brief appears to concede this point when it states: "On its face, it appears that the policy excludes 'motorcycle racing or stunting,' which seems plain enough."

6. Degerlia and Deerhake attempt to argue that this phrase, due to its location in the first paragraph of the exclusion, applies throughout. A more logical reading of the exclusion, however, would pay heed to similar limitations that arise in the later paragraph and would recognize that the limiting phrase in the first paragraph does not extend beyond the first paragraph.

7. Degerlia and Deerhake also argue that the Association intended to purchase excess coverage that was identical to its primary coverage,

and point to the language in the National Union policy, which arguably provides coverage for the occurrence in question, as support for this argument. We do not address this contention, however, because it has been waived. Degerlia and Deerhake did not raise this argument until they filed their motions to reconsider, but a motion to reconsider does not "serve as the occasion to tender new legal theories [or new evidence] for the first time." *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 666 (N.D.Ill.1983), *aff'd*, 735 F.2d 1367 (7th Cir. 1984). This argument was always available to the appellants but they waited too long before raising it; neither the district court nor this court is obliged to examine arguments that are raised in an untimely fashion.

phrase, we do not believe that the appellants' "factual circumstances" argument would require us to change the outcome here. Illinois law recognizes that both the insurer and the insured have expectations regarding an insurance policy; it is concerned about the *parties'* intent, not a *party's* intent. *See Squire v. Economy Fire & Cas. Co.,* 69 Ill.2d 167, 180, 370 N.E.2d 1044, 1049–50, 13 Ill.Dec. 17, 22–23 (1977); *Reserve Ins. Co. v. General Ins. Co.,* 77 Ill.App.3d 272, 280, 395 N.E.2d 933, 938, 32 Ill.Dec. 552, 557 (1st Dist.1979). The Association may well have intended the policy language to exclude only sponsored "racing or stunting," but such an intention was unreasonable in light of the policy's clear and unambiguous language. And nothing in *Glidden* leads us to the conclusion that one party's unreasonable intent may provide the basis for finding an ambiguity in an insurance policy. Indeed, the Illinois Supreme Court has held that, *Glidden* or no *Glidden,* one party's subjective intent may be rebutted by "clear and unambiguous policy language from which it can be readily seen and understood that coverage was limited." *Menke v. Country Mut. Ins. Co.,* 78 Ill.2d 420, 425, 401 N.E.2d 539, 542, 36 Ill.Dec. 698, 701 (1980); *see Carini v. Allstate Ins. Co.,* 113 Ill.App.3d 202, 205, 446 N.E.2d 1221, 1223, 68 Ill.Dec. 824, 826 (1st Dist.1983) ("the language of the [insurance] contracts tell us what was promised"); *Sharples v. General Cas. Co.,* 85 Ill.App.3d 899, 901–02, 407 N.E.2d 674, 677, 41 Ill.Dec. 176, 179 (1st Dist.1980); *see also State Farm Fire & Cas. Co. v. Moore,* 103 Ill.App.3d 250, 255, 430 N.E.2d 641, 646, 58 Ill.Dec. 609, 614 (2d Dist.1981) ("Courts will not create an ambiguity where none exists.").[8]

There being no genuine issues of material fact raised in opposition, and having demonstrated that it is entitled to judgment as a matter of law, Granite State is entitled to summary judgment in its favor. *See New Process Baking Co. v. Federal Ins. Co.,* 923 F.2d 62 (7th Cir.1991) (per curiam). The decision of the district court is

AFFIRMED.

---

8. Moreover, the "evidence" is hardly substantial; the policy issued by Lincoln does not even appear to be a part of the record in this case and, in any event, Degerlia and Deerhake have not bothered to cite its location. Without that policy before us, it is difficult to determine the extent of the additional coverage and, subsequently, to garner any real insight concerning the Association's intentions. Whatever the exact parameters of the Illinois Supreme Court's decision in *Glidden,* we have no doubt that the "factual circumstances" surrounding the issuance of an insurance policy must be presented to the court in the form of evidence, not speculation.