928 F.2d 1135
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
HOME INSURANCE COMPANY, a corporation, Plaintiff/Appellee,
v.
GLOBE-AMERADA GLASS COMPANY, a corporation, Defendant/Appellant.
 No. 90-1808.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 28, 1991.
Decided March 27, 1991.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 86 C 5182, James B. Parsons, Judge.
 N.D.Ill.
 AFFIRMED.
 Before BAUER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 The district court held that a policy issued by Home Insurance Company (Home) did not cover the accident and injuries suffered by the chairman of the board of Globe-Amerada Glass Company (Globe). Globe appeals the denial of coverage. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 At the time of the accident that caused his death, Morrie Kellman was the chairman of the board of Globe. Mr. Kellman was one of the covered persons under a group accident policy issued to Globe by Home. The policy was in effect from June 12, 1984 to June 12, 1987. Home potentially was liable to pay $300,000 under the policy for Mr. Kellman's accident.
 
 
 4
 The policy described "[t]he hazards against which insurance is provided a Covered Person" as follows:
 
 
 5
 Injury sustained by such person anywhere in the world while on the business of the Policyholder and during the course of any bonafide [sic] trip made by the Covered Person.
 
 
 6
 Such trip shall be deemed to have commenced when the Covered Person leaves his residence or place of regular employment for the purpose of going on such trip, whichever last occurs, and shall continue until such time as he returns to his residence or place of regular employment, whichever first occurs.
 
 
 7
 The policy defined "while on the business of the Policyholder" to mean "while on assignment by or at the direction of the Policyholder for the purpose of furthering the business of the Policyholder."
 
 
 8
 Mr. Kellman's accident occurred on Sunday, June 2, 1985 at the Twin Orchard Country Club (Twin Orchard). Mr. Kellman's home was located on the first hole of Twin Orchard's golf course. He frequently took a massage at the clubhouse on Sundays, played bridge there on Sunday afternoons, and used the clubhouse for a variety of other social activities. Mr. Kellman also conducted business at Twin Orchard.
 
 
 9
 At approximately 9:30 a.m. on June 2, 1985, Mr. Kellman called Sol Shor, a longtime friend who had been serving as a business consultant for Globe since 1983 or early 1984. Shor recently had returned from a business trip. It was customary for Mr. Kellman and Shor to meet to discuss Shor's trips to Globe's branch offices. During the June 2 telephone conversation, Mr. Kellman asked Shor to meet him for dinner that evening at Twin Orchard. Mr. Kellman's wife and son were to join them for dinner.
 
 
 10
 By approximately 11:00 a.m., Mr. Kellman had arrived at the clubhouse. Prior to Shor's arrival some six and one-half hours later, Mr. Kellman watched television, had lunch with his son, gave his wife some golf tips, and played bridge for several hours. Mr. Kellman and Shor spoke briefly in the clubhouse lobby at approximately 5:30 p.m. Mr. Kellman then went to take a shower in the clubhouse locker room, where he fell and suffered the injuries that ultimately led to his death on July 26, 1985.
 
 B. District Court Proceedings
 
 11
 After Globe sought to recover under the policy, Home filed a declaratory judgment action that asked for a declaration that the June 2 accident was not covered by the policy. Globe then filed a counterclaim, which also sought declaratory relief. A bench trial resulted in a declaratory judgment for Home and dismissal with prejudice of Globe's counterclaim.
 
 
 12
 The court concluded that Mr. Kellman would have visited Twin Orchard on June 2 even if he did not plan to meet Shor at dinner:
 
 
 13
 Kellman had lunch with his son at the club because they had planned it that way. Kellman ... played bridge with his buddies in their usual locker room location. ... And there was no evidence showing that his schedule that day was unusual or strange because of his expected visit with Shor. The evidence is that Kellman fit Shor into a practiced pattern. Under these circumstances I must find that the primary reason for Mr. Kellman being at the club was personal rather than business related.
 
 
 14
 Mem. op. and order of Oct. 6, 1989 at 6-7.[1] Therefore, the court reasoned, the June 2 injuries "were not intended by the litigants to have been covered by" the policy at issue. Id. at 7.
 
 
 15
 After the district court denied Globe's motion to alter or amend the judgment, this appeal followed.
 
 II
 ANALYSIS
 
 16
 The sole issue in this appeal is whether the accident and injuries that led to Mr. Kellman's death were of a type that the parties intended to be covered by the policy that Home issued to Globe. Globe contends, and Home does not dispute, that Illinois substantive law applies in this diversity action. This court recently summarized Illinois principles for interpretation of insurance contracts:
 
 
 17
 Under Illinois law, ... we interpret the language of an insurance policy as a matter of law. Sawyer Fruit & Veg. Co-op. Corp. v. Lumbermens Mut. Cas. Co., 117 Ill.App.3d 407, 408, 453 N.E.2d 826, 827, 73 Ill.Dec. 1, 2 (1st Dist.1983). On one end of a spectrum we place that policy language that is clearly and unambiguously in favor of coverage. At the other end of the spectrum we place that policy language that clearly and unambiguously excludes coverage. If the relevant language in the ... policy falls at either end of the spectrum--i.e., if it is subject to only one reasonable interpretation--then we apply the terms of the policy as written. See Severs v. Country Mut. Ins. Co., 89 Ill.2d 515, 521, 434 N.E.2d 290, 292, 61 Ill.Dec. 137, 139 (1982); see also National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 361 (7th Cir.1987) ("an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract"). If the relevant language in the ... policy is ambiguous and falls between the two ends of the spectrum--i.e., if it is subject to more than one reasonable interpretation, at least one of which would favor coverage--then we construe the policy strictly against its drafter, the insurer. Goldblatt Bros., Inc. v. Home Indem. Co., 773 F.2d 121, 125 (7th Cir.1985).
 
 
 18
 Granite State Ins. Co. v. Degerlia, No. 90-1843, slip. op. at 4-5 (7th Cir. Feb 14, 1991) (to be reported at 925 F.2d 189).
 
 
 19
 From the time that it first denied coverage for Globe's claim, Home has insisted that Mr. Kellman's "accident did not occur during the course of any bonafide [sic] trip." R. 1, Ex. B at 1. Although the policy did not define "bona fide trip," the plain and ordinary meaning of this term certainly does not encompass activities such as those that the district court found Mr. Kellman engaged in on June 2, 1985. The record amply supports the district court's finding that Mr. Kellman "fit Shor into a practiced pattern" of playing bridge and engaging in other social activities at Twin Orchard on Sundays. We cannot say that the district court erred in refusing to conclude that the parties intended to characterize such a "practiced pattern" of recreational activity as a bona fide trip for purposes of corporate insurance coverage. Deciding to schedule a business meeting does not automatically convert an essentially recreational activity into a bona fide business trip.[2]
 
 
 20
 Furthermore, as Home argues in its brief, "[t]he 'bona fide trip' covered by the policy commences only when the employee leaves his residence 'for the purpose of going on such [business] trip' and terminates when he returns." Appellee's Br. at 14 (quoting Appellant's App. [policy excerpts] at 26) (emphasis in brief)). The record presents no evidence that, when Mr. Kellman left his home on the morning of June 2, 1985, he had any plans to meet Shor or to conduct other business until dinner. Therefore, he did not leave his home "for the purpose" of commencing a bona fide business trip. Had his purpose in leaving his home been business related, he had no reason to leave so early--and certainly no need to take his shower in the clubhouse.
 
 
 21
 As the district court found, "Kellman doubtless would have showered to get ready for dinner whether or not Shor would have joined them, and would have had dinner regardless of whether Mr. Shor was to have join [sic] them or not." Mem. op. and order of Oct. 6, 1989 at 7. We find no reversible error in the judgment of the district court.
 
 Conclusion
 
 22
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 In assessing the purpose of Mr. Kellman's June 2 visit to Twin Orchard, the district court found "helpful" the " 'dual purpose rule' " of Schultz v. Industrial Commission, 475 N.E.2d 547 (Ill.App.Ct.1984), a workers' compensation case:
 "An injury arises out of and in the course of employment under the dual purpose rule if it is incurred during a 'business trip.' When a trip serves both business and personal purposes, it is personal if the trip would have been made even absent the business purpose but would not have been made absent the personal purpose. Conversely, it is a business trip if the trip would have been made absent the personal purpose because the service performed for the employer during the trip would have caused the trip to be made even if it had not coincided with the employee's personal journey."
 Mem. op. and order of Oct. 6, 1989 at 5-6 (quoting Schultz, 475 N.E.2d at 549).
 
 
 [2]
 Globe argues that, because the terms of the insurance contract in this case governing business-related travel were unambiguous, the district court should not have borrowed the dual purpose analysis from Illinois workers' compensation law when it interpreted the contract. Globe further contends that the district court erred in its application of the dual purpose rule to the facts of this case. According to Globe, the court should have determined whether Mr. Kellman's plans to discuss business with Shor were a "concurrent cause" of his visit to Twin Orchard, not whether business was "the 'primary' purpose" of the visit. Appellant's Br. at 15
 The district court used the dual purpose rule only as a "helpful" analogy; it did not treat Schultz as controlling. We need not decide whether it would have been permissible to place any reliance on the dual purpose rule or even whether it was correctly applied, because we have relied on a more direct route to the conclusion that the district court reached concerning the intent of the parties. "We may affirm the district court's decision on any ground that the record fairly supports and the appellee has not waived below." Shields v. Burge, 874 F.2d 1201, 1210 n. 2 (7th Cir.1989).