Frank Robert NESS, Plaintiff,

v.

**FORD MOTOR COMPANY, a corporation; The Chubb Corporation; and Vigilant Insurance Company, Defendants.**

No. 89 C 0689.

United States District Court,
N.D. Illinois, E.D.

Oct. 26, 1993.

Paul B. Episcope, John C. Erb, Thomas D. Fazioli, Colleen A. Biggare, Paul B. Episcope, Ltd., Chicago, IL, for plaintiff.

Barbara L. Ross, James K. Toohey, Daniel Patrick Hogan, Ross & Hardies, P.C., Jeremiah P. Connolly, Bollinger, Ruberry and Garvey, Chicago, IL, for defendants.

### *OPINION AND ORDER*

NORGLE, District Judge:

Before the court are cross-motions for summary judgment filed by plaintiff Frank Robert Ness ("Ness") and defendants The Chubb Corporation ("Chubb") and Vigilant Insurance Company ("Vigilant"). For the following reasons, Ness' motion for summary judgment is granted and Chubb and Vigi-

lant's joint motion for summary judgment is denied.[1]

## BACKGROUND

On January 7, 1987, Ness was injured in an automobile accident.[2] The injuries Ness sustained during the accident rendered him a quadriplegic. At the time of the accident, Ness was riding as a passenger in an underinsured automobile owned and operated by Donald Moseley ("Moseley"). There were no other vehicles involved in the accident.

Prior to the January 7, 1987 accident, Chubb and Vigilant had issued an insurance policy to the parents of Ness, which included an underinsured motorist provision that provided underinsurance coverage to Ness.[3] On July 14, 1988, Chubb and Vigilant paid Ness the sum of $750,000, the full limit of the underinsured motorist coverage under the policy. The underinsurance proceeds of $750,000 were paid to Ness in "full settlement and final discharge of all claims under the ... policy for injuries to [Ness] arising out of the ownership or operation of an underinsured automobile by [Moseley]...." Pltf.'s Mot. for Summary Judgment, Exhibit C at 1.

On January 26, 1989, Ness filed a two-count complaint against defendant Ford Motor Company ("Ford"). The complaint does not name or join Moseley as a party defendant. Ness asserts two product liability claims against Ford for the enhanced injuries caused by the lack of crashworthiness of the Ford manufactured vehicle (the "Ford Litigation"). The Ford Litigation involves matters that are separate and distinct from the ownership and operation of an underinsured motor vehicle operated by Moseley.[4]

On May 19, 1993, over four years into the Ford Litigation, Chubb and Vigilant notified Ness of a lien and an assertion of a subrogation right in Ness' action against Ford. In response to Chubb and Vigilant's assertion of their subrogation right in the Ford Litigation, Ness filed a second amended complaint on June 1, 1993 adding a count against Chubb and Vigilant for a declaratory judgment. Subsequently, the parties filed the instant cross-motions for summary judgment.

## DISCUSSION

 To grant summary judgment "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

1. If Ness recovered nothing from Ford, the issue of subrogation raised in the cross-motions for summary judgment is moot. The cross-motions for summary judgment were filed and pending while the parties were engaged in active settlement negotiation. At the conclusion of the initial settlement negotiation, the parties requested that the court rule on the cross-motions. Given the posture of the settlement negotiation and the parties' request for a ruling, the subrogation issue is ripe for consideration.

2. The following facts are drawn from the statement prepared by Ness in accordance with Rule 12(M) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules") and various other exhibits attached to the cross-motions for summary judgment. The material facts under the 12(M) statement of Ness are deemed to be admitted by Chubb and Vigilant because Chubb and Vigilant failed to file a 12(N) statement pursuant to the Local Rules. Local Rule 12(N); see also Stewart v. McGinnis, 5 F.3d 1031 (7th Cir.1993) (district courts may strictly apply Rule 12(N)); Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1103 (7th Cir.1990) (enforcement of Local Rules are within the discretion of district court). Further, Chubb and Vigilant failed to comply with Rule 12(M) in filing their own motion for summary judgment. Rule

12(M) provides that failure to submit a 12(M) statement "constitutes grounds for denial of the motion" for summary judgment. Local Rule 12(M). In the instant action, however, Chubb and Vigilant's motion for summary judgment is not denied under 12(M). The court is fully advised of the material facts which are not in dispute, thus the court renders this decision on the merits.

3. The relevant provision of the policy states that:

We cover damages a covered person is legally entitled to receive from the owner or operator of an ... underinsured motorized land vehicle, up to the limit shown in the Coverage Summary. We cover these damages only if they exceed the Required Primary Underlying Insurance and are caused by an occurrence during the policy period, unless otherwise stated. Pltf.'s Mot. for Summary Judgment, Exhibit B at W–3.

4. Chubb and Vigilant admit that they are seeking to "subrogate the settlement payments from tortfeasors whose liability is unrelated to the liability of the uninsured [sic] motorist." Defs.' Mem. of Law in Resp. to Pltf.'s Mot. for Summary Judgment at 5.

the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A scintilla of evidence will not be adequate to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the instant case, the material facts are not in dispute. The parties are in agreement as to the relevant facts. The only disputed matter is whether Chubb and Vigilant's right to subrogation pursuant to the terms of the insurance policy at issue may be asserted in the Ford Litigation. "The construction of the terms of an insurance policy and the effect of the [related] statutory requirements are questions of law appropriate for summary judgment disposition." *Banes v. Western States Ins. Co.*, 247 Ill.App.3d 480, 186 Ill.Dec. 579, 581, 616 N.E.2d 1021, 1023 (1993).[5]

The difficulty in the enforcement of the subrogation clause in the Ness' policy arises because the accident which caused his injuries was allegedly caused by two tortfeasors with varying abilities to compensate Ness for his injuries: Moseley is underinsured and Ford is sufficiently insured. Chubb and Vigilant argue that the sum paid to Ness under the underinsurance provision of the policy may be recouped from any settlement or judgment amount recovered from Ford. Ness responds that Chubb and Vigilant do possess the right of subrogation to the extent

of the amount paid to Ness, but such right of subrogation does not extend to settlement proceeds recovered from Ford whose liability is unrelated to the liability of Moseley.

■ The rules of contract construction apply when terms of an insurance policy are at issue. *Monsalud v. State Farm Mut. Auto. Ins. Co.*, 210 Ill.App.3d 102, 154 Ill. Dec. 748, 750, 568 N.E.2d 969, 971 (1991). The relevant terms and corresponding provisions, however, are not to be construed in a vacuum; rather, the terms must be read in conjunction with the policyholder's reasonable expectations, the public policy behind the relevant provision, and the intended coverage of the provision. *Hoglund v. State Farm Mut. Auto. Ins. Co.*, 148 Ill.2d 272, 170 Ill.Dec. 351, 354, 592 N.E.2d 1031, 1034 (1992).[6] When the relevant policy terms are viewed in this way and a latent ambiguity in the policy emerges, such ambiguity must be construed in favor of the insured. *Gibbs v. Madison Mut. Ins. Co.*, 242 Ill.App.3d 147, 182 Ill.Dec. 719, 724, 610 N.E.2d 143, 148 (1993).

■ The public policy behind underinsurance coverage is to bridge the gap between the underinsured driver's liability policy limit and the injured party's underinsurance coverage limit. *Banes*, 186 Ill.Dec. at 581, 616 N.E.2d at 1023. Section 143a–2(4) of the Insurance Code of Illinois provides that "[t]he limits of liability for an insurer providing underinsurance ... coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies ... maintained on the *underinsured motor vehicle*." 215 ILCS 5/143a–2(4) (1993) (emphasis added). Thus, the primary function of the underinsurance coverage is to place the injured party in the same position as if the underinsured driver had been adequately in-

---

5. Neither Ness nor Chubb and Vigilant raise the issue of the applicable state law. Rather, both parties rely on Illinois authority to support their respective positions. In diversity cases, absent a challenge by either party to the choice of law, the law of the forum state will govern the substantive issues raised in the pleadings. *TransAmerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir.1992).

6. In *Hoglund*, the disputed coverage was uninsurance; however, the *Hoglund* rationale is not limited to uninsurance motorist cases. *Banes*, 186 Ill.Dec. at 582, 616 N.E.2d at 1024.

sured.[7] *Hoglund,* 170 Ill.Dec. at 355, 592 N.E.2d at 1035; *Banes,* 186 Ill.Dec. at 583–584, 616 N.E.2d at 1025–1026.

The right of subrogation exists when the insurer pays the insured the full amount of the proceeds the insured is entitled under the policy. *Banes,* 186 Ill.Dec. at 583, 616 N.E.2d at 1025. The doctrine of subrogation is "founded on principles of justice and equity, and its operation is governed by principles of equity." *Remsen v. Midway Liquors, Inc.,* 30 Ill.App.2d 132, 174 N.E.2d 7, 12 (1961). The right of subrogation must be recognized to prevent injustice and unjust enrichment, but that right will not be enforceable where the execution will result in inequity. *Banes,* 186 Ill.Dec. at 583, 616 N.E.2d at 1025.

In the case at bar, inequity will result to Ness if the right of subrogation in the amount of $750,000 is extended to the Ford Litigation. Pursuant to the underinsurance coverage provision, Chubb and Vigilant were obligated to pay Ness the policy limit, $1 million, less the policy limit collected from the underinsured driver Moseley, $250,000. Chubb and Vigilant paid the sum of $750,000 to Ness on behalf of Moseley who was the owner and operator of the underinsured motor vehicle. The inequity that will result from permitting Chubb and Vigilant to recoup the $750,000 from the settlement or judgment collected from Ford is that Ford and Ness would bear the burden of "filling the gap" between the underinsurance coverage limit and Moseley's liability coverage limit. Further, if Moseley was adequately insured up to $1 million, Ness would recover the $1 million policy limit of Moseley and also recover compensation from Ford without having to reimburse Moseley the $1 million settlement.[8] Thus, if Chubb and Vigilant were allowed to exercise their subrogation right as to any sum of money recovered from Ford, it would result in Ness being placed in a worse position than if Moseley carried adequate insurance.

Chubb and Vigilant support their position by relying on the provision in the insurance policy concerning "Transfer of rights"[9] and the subrogation clause in the "Release and Trust Agreement"[10] (the "Release") signed by Ness on July 14, 1988 which essentially provides that Chubb and Vigilant have the right to recover $750,000 if Ness recovers any sum from any person or entity less prosecution costs and related fees. Chubb and Vigilant also argue that under *Remsen* and *Glidden v. Farmers Auto. Ins. Ass'n,* 57 Ill.2d 330, 312 N.E.2d 247 (1974), they are permitted to recover the subrogation amount from the settlement or judgment recovered from any individual or entity legally responsible for the insured's injuries.

A literal interpretation of the relevant subrogation provisions would nullify the coverage intended by the policy and destroy the expectation of the policyholder. When the "Transfer of rights" is construed in conjunc-

---

7. The Illinois courts use the term "adequately insured" in discussing the public policy and purpose of underinsurance coverage, but this term does not necessarily mean a sufficient amount of insurance to completely cover the injured party's damages. Rather, a tortfeasor's liability coverage is adequate if its policy limit equals the policy limit of the injured party's underinsurance. *Banes,* 186 Ill.Dec. at 584, 616 N.E.2d 1026.

8. If Moseley was insured up to $1 million and Ness recovers $2.5 million from Ford in settlement, the net recovery for Ness' injuries would be $3.5 million. If, on the other hand, Chubb and Vigilant were permitted to extend their subrogation right to the Ford Litigation and Ness recovered the same amount in settlement, the net recovery for his injuries would be $1.75 million. (The figures used in this example are not actual settlement figures).

9. "If [Chubb and Vigilant] make a payment under this policy, [Chubb and Vigilant] will assume any recovery rights a covered person has in connection with that loss, to the extent we have paid for the loss." Pltf.'s Mot. for Summary Judgment, Exhibit A at Y–1.

10. The relevant clause provides that:

That [Chubb and Vigilant] shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of [Ness] ... against any person or organization legally responsible for the bodily injury because of which payment is made....

Pltf.'s Mot. for Summary Judgment, Exhibit C at 1.

tion with Ness' expectation, the public policy behind underinsurance, and the intended coverage, a latent ambiguity surfaces as to the phrase "in connection with that loss." In the context of this case, the phrase may be construed to mean that Chubb and Vigilant have the right to recover the underinsurance proceeds from any money recovered in connection with Ness' bodily injury. In the alternative, however, the "loss" may be limited to the loss caused by Moseley and his being underinsured. The second interpretation is reasonable given the last clause in the provision which reads "to the extent [Chubb and Vigilant] have paid for the loss." Chubb and Vigilant have paid $750,000 for the loss caused by Moseley. Chubb and Vigilant have not paid Ness any amount for the loss caused by Ford. Because there are at least two ways of reasonably interpreting the "Transfer of rights," such provision will be construed in favor of Ness and strictly against Chubb and Vigilant. *See Gibbs,* 182 Ill.Dec. at 724, 610 N.E.2d at 148.

 It is a fundamental principle that parties may agree to any terms they choose in entering a contract. Nonetheless, if the contract is contrary to public policy, such agreement will not be enforced. *Banes,* 186 Ill.Dec. at 581, 616 N.E.2d at 1023. The subrogation provision contained in the Release is contrary to the public policy behind underinsurance coverage. Chubb and Vigilant's exercise of their subrogation right as specified will cause Ness to be in a worse position than if Moseley purchased adequate insurance coverage. The intent of the Illinois General Assembly in enacting underinsurance motorist coverage is "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." *Sulser v. Country Mut. Ins. Co.,* 147 Ill.2d 548, 169 Ill.Dec. 254, 256, 591 N.E.2d 427, 429 (1992). Thus, the subrogation provision in the Release must be limited to settlement or judgement recovered from Moseley and not Ford.

 Additionally, the language employed in the Release is broader than the language used in the "Transfer of rights" provision. It is well established that parties to a contract may freely modify their agree-

ment. A valid modification to an existing agreement must meet all the criteria necessary for a valid contract: offer, acceptance and consideration. *Pankow v. WestAmerica Mortg. Co.,* 740 F.Supp. 1309, 1313 (N.D.Ill. 1990) (interpreting Illinois law). The subrogation clause in the Release is a modification of the subrogation clause contained in the "Transfer of rights" provision. However, Chubb and Vigilant provided no new and additional consideration to validate the modification. Therefore, the broader subrogation clause in the Release will not expand the rights of Chubb and Vigilant.

The authorities cited by Chubb and Vigilant in support of their subrogation right, *Remsen* and *Glidden,* are not persuasive. The court in *Glidden* adhered to the holding of *Remsen,* that the insurer was subrogated to the rights of the insured to any proceeds recovered from one legally responsible for the injury, without discussion of the basis or prevailing public policy reasons for following *Remsen.* Therefore, the court will analyze the *Remsen* opinion to explain the inapplicability of these two cases.

In *Remsen,* the insurer was able to recover the payment made to the plaintiffs under the uninsurance coverage from the settlement proceeds the plaintiffs recovered from the Dramshop defendants. The liability of the Dramshop defendants was independent from the liability of the uninsured driver. The decision of the *Remsen* court was consistent with the existing public policy in 1961. The court in applying the subrogation right in *Remsen* discussed the public policy behind the uninsurance motorist coverage. The court opined that "[i]nsurance for protection against bodily injury as a result of the wrongful acts of an uninsured motorist is of relative recent origin. The purpose is to provide *some form of compensation* for innocent victims of accidents." *Remsen,* 174 N.E.2d at 11–12 (emphasis added). Thus, the insurer's assertion of its right to reimbursement from the settlement proceeds paid by the Dramshop defendants did not violate the applicable public policy because the plaintiffs remained compensated by the initial fund provided by the insurer.

The question of law involved in *Remsen* is strikingly similar to the case at bar. The *Remsen* holding is not applicable to the instant case, however, because the current public policy behind uninsurance and underinsurance is not merely to compensate the innocent victim, but to place him in a substantially the same position he would occupy if the tortfeasor had carried adequate insurance. *Hoglund,* 170 Ill.Dec. at 355, 592 N.E.2d at 1035; *Banes,* 186 Ill.Dec. at 583–584, 616 N.E.2d at 1025–1026.

In sum, Chubb and Vigilant do not have a right of recovery or subrogation against the proceeds of any recovery Ness may obtain by settlement or judgment from Ford. Accordingly, any lien or claim of a right of recovery or subrogation by Chubb and Vigilant against such proceeds is void.

### CONCLUSION

For the foregoing reasons, Ness' motion for summary judgment is granted and Chubb and Vigilant's joint motion for summary judgment is denied.

IT IS SO ORDERED.