[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
David Hammersla was severely injured when Bennie Barbera negligently operated his company-owned vehicle into Hammersla's Ford Escort. There is evidence in the record suggesting that he suffered more than one million dollars in damages.[1]
Barbera is the president of M.P. Machining, Inc., which owned the vehicle. On the day of the accident, he was en route to purchase a tool that was necessary for his business. He, individually, had an automobile insurance policy on the vehicle and a commercial general liability (CGL) policy for his business with GRE Insurance Company ("GRE").
Hammersla and his wife sued Barbera and his business for personal injuries and loss of consortium, respectively. To settle the claims against Barbera, GRE paid the Hammerslas the $300,000 limit on the automobile policy. The complaint against Barbera was dismissed with prejudice, but the complaint against the business was dismissed without prejudice.
Seeking more compensation, Hammersla filed an underinsured motorist claim with his own insurance company, Liberty Mutual Insurance Group, under a policy he had on his Ford Escort. This policy also had a $300,000 per accident limit. Liberty Mutual decided that, since the accident occurred on December 16, 1994, Hammersla's claim was governed by Am. Sub. S.B. No. 20, 145 Ohio Laws, Part I, 204, 238, which became effective about two months before the accident on October 20, 1994. S.B. 20 amended R.C. 3837.18 and basically provides that a person is "underinsured" only where the limit of the tortfeasor's liability insurance is less than the limit of his own underinsurance policy. Because the limit of Hammersla's policy was the same as the limit of Barbera's policy, Liberty Mutual denied the underinsurance claim.
Hammersla also filed a claim under Barbera's CGL policy with GRE, asserting that certain provisions in the insuring agreement could be interpreted in such a way as to allow recovery under an "other insurance" and/or "excess insurance" clause in Section IV. This policy has a limit of $500,000.
GRE filed a declaratory judgment action seeking a pronouncement from the court that it was not obligated to pay more money under the "excess coverage" section of the CGL policy. It argued that there was an express exclusion from liability for any bodily injuries caused by the ownership or use of any "auto" by any insured.
Hammersla filed a third-party complaint against Liberty Mutual seeking a declaration as to his rights to underinsurance motorist benefits in the Escort policy.
All parties moved for summary judgment on their respective issues. The trial court granted summary judgment for the insurance companies and Hammersla has appealed. His assigned errors state:
 "[1.] The trial court erred in granting the summary judgment motion of Appellee-Third Party Defendant, Liberty Mutual Group.
 "[2.] The trial court erred in granting the summary judgment motion of Appellee-Plaintiff, GRE Insurance Group."
In the first assignment of error, Hammersla argues that he is entitled to underinsured motorist benefits because the policy was entered before the enactment of S.B. 20. Alternatively, he argues that Liberty Mutual had a duty to inform him about the change in the law effectuated by S.B. 20, and because it did not do so, his claim is governed by prior law.
Hammersla's first argument has merit. In the syllabus of Rossv. Farmer's Insurance Group of Companies (1998), 82 Ohio St.3d 281, the Supreme Court held that "for the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross, 82 Ohio St.3d at 289.
Hammersla entered into the Ford Escort policy on March 24, 1994, which was about seven months before the October 20, 1994 effective date of S.B. 20. Therefore, his claim is governed by the prior version of R.C. 3837.18 as interpreted by Savoie v.Grange Mutual Insurance Company (1993), 67 Ohio St.3d 500. Ross,82 Ohio St.3d at 289. According to Savoie, a person is "underinsured" if he suffers damages in excess of the limits of the tort-feasor's liability policy. Savoie, 67 Ohio St.3d at paragraph three of the syllabus.
The evidence here was that Hammersla suffered more than one million dollars in damages, but that Barbera's liability policy had a limit of only $300,000. Thus, Hammersla was "underinsured" as that phrase was interpreted in Savoie, and the trial court erred in granting summary judgment to Liberty Mutual on his underinsured motorist claim. Accord Kirk v. Silverman (July 28, 1998), Franklin App. No. 97APE12-1601, unreported, 1998 Ohio App. LEXIS 3463.
It is unnecessary to address the second argument.
The first assignment of error is sustained.
In the second assignment of error, Hammersla argues that he is entitled to $500,000 in "excess" insurance benefits under Barbera's CGL policy on the business. We disagree.
In the insuring agreement of Coverage A, GRE stated:
 "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. * * *."
In the exclusions, GRE provided:
"This insurance does not apply to:
"* * *
 "g. `Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured."
It is plain and unambiguous that the CGL insurance policy does not apply to any bodily injuries arising out of the use of an automobile by any insured. An "insured" includes the executive officers of M.P. Machining, Inc., with respect to their duties as officers. When Barbera was operating the company vehicle on his way to purchase a tool for use in his business, he was acting within the scope of his duties as President. The trial court did not err when it ruled the automobile exclusion applies.
Hammersla's citation to the "Other Insurance" provisions in Section IV of the CGL policy is unpersuasive. Paragraph four of that section states:
"4. Other Insurance.
 "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
"* * *
"b. Excess Insurance
 "This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis:
 "(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for `your work;'
"* * *
 "(3) If the loss arises out of the maintenance or use of aircraft, `autos' or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I)."
Section IV further provides that if there is a loss covered by the CGL and by another insurance policy, GRE will pay only its prorata share of its coverage.
These "other insurance" provisions define GRE's liability limits only in cases where the loss is covered under Coverage A or B and not subject to the express exclusions. Losses caused by the use of an automobile owned by an insured (M.P. Machining, Inc.) are simply not covered by the CGL policy, as expressly set forth in Exclusion g; therefore, the excess insurance clause in Section IV of the CGL policy is inapplicable to Hammersla's accident.Liberty Mut. Ins. Co. v. State Farm Auto. Ins. Co. (Md.App. 1971),277 A.2d 603, 610; see Scott v. Mt. Orab Ford Mercury, Inc. (Jan. 7, 1991), Clermont App. No. CA90-02-019, unreported, 1991 Ohio App. LEXIS 15 (Jones, P.J., dissenting) (excess insurance clause does not apply where loss is expressly excluded by an umbrella policy).
Compare this case to Glidden v. Farmers Automobile InsuranceAssociation (Ill. 1974), 312 N.E.2d 247, where the claimant owned three automobiles and had three insurance policies issued by the same insurance company — one covering each vehicle. The policies each provided $10,000 in uninsured motorist coverage. They also contained "other insurance" provisions limiting the insurance company's liability to its pro rata share of coverage. The insured's wife was struck and killed by an uninsured motorist. Clearly, each policy covered the loss. If the pro rata other insurance clauses were read literally, the claimant could recover only $3,333.33 on each policy for a total of $10,000. The Supreme Court of Illinois rejected that interpretation, holding that the nature of the pro rata sharing in the other insurance clauses was ambiguous in the context where a single company issued three separate policies. Id. at 250. The court concluded that the claimant was entitled to $30,000. Id. at 251. See, also, UnitedServices Auto. Assoc. v. Dokter (Nev. 1970), 478 P.2d 583, where the same result was reached on substantially similar facts where a single insurance company issued two policies covering losses caused by an uninsured motorist.
Essentially, the claimants in Glidden and Dokter recovered under multiple policies issued by the same insurance company because each policy covered the loss in question. The policies "overlapped." Hammersla, on the other hand, is not entitled to recover under both of the policies issued by GRE because, although the automobile policy on the vehicle covered personal injuries caused by the use of an automobile owned by an insured, the CGL clearly did not. Only one of the two insurance policies issued by GRE covered Hammersla's loss. We, therefore, do not reach the rule of construction applied in Glidden and Dokter that any ambiguities in the other insurance clauses of multiple, overlapping policies, issued by the same company, must be resolved in favor of coverage.
Our interpretation of the contract at issue here does not render any part of it meaningless. As we read them, the other insurance clauses in Section IV of the policy operate only in a few, very narrow situations. For example, if the driver of a delivery truck owned and insured by another company negligently injured a person on the business premises of M.P. Machining, Inc., the business may be alleged to have been contributorily negligent. Under these circumstances, the personal injuries were not caused by an automobile owned, operated, rented, or hired (i.e., leased) by the business or any of its employees. Therefore, the exclusion in sub-paragraph g. would not apply, and GRE would be responsible to contribute to the satisfaction of the claim as provided by the CGL. Under the "other insurance" clauses, GRE would share the loss with the insurance company covering the delivery truck.
The second assignment has no merit.
Summary judgment for GRE is affirmed. Summary judgment for Liberty Mutual is reversed. Since Hammersla does not argue here that his own motion for summary judgment against Liberty Mutual should have been granted, we will remand this case to the trial court for further proceedings that are consistent with this opinion. ______________________________ JUDGE ROBERT A. NADER
CHRISTLEY, P.J.,
O'NEILL, J., concur.
[1] Hammersla attached a copy of his personal injury complaint against Barbera as an exhibit to his declaratory judgment pleadings. Attached as exhibits to the personal injury complaint were (1) a summary of medical expenses Hammersla incurred, and (2) a letter from an economist who stated Hammersla suffered a loss of future income in excess of one million dollars. All of these materials were expressly incorporated by reference into Hammersla's declaratory judgment pleadings. Thus, this is proper information upon which the court may consider in a summary judgment exercise. Civ.R. 56(C).