**Elder S. CHAMBERS,
Plaintiff–Appellee,**

v.

**James MAHER, Defendant–Appellant.**

No. 89–2185.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1990.

Decided Oct. 15, 1990.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff-appellee.

Elder S. Chambers, Chicago, Ill., pro se.

Ruth M. Moscovitch, Jean Dobrer, and Kelly R. Welsh, Asst. Corp. Counsels, Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendant-appellant.

Before FLAUM and KANNE, Circuit Judges, and NOLAND, Senior District Judge.*

KANNE, Circuit Judge.

Elder Chambers is a street minister who often preaches in downtown Chicago using a sound amplifier. In response to a complaint, Lydia Pecina, an Environmental Control Inspector for the City of Chicago, found that Chambers was preaching at a sound level in violation of a city ordinance. Because Chambers had once run away from Pecina when she tried to cite him for excessive noise, Pecina looked for a police officer to assist her in issuing Chambers a citation. Pecina found Officer Patrick Nolan. Pecina and Nolan approached Cham-

---

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is      sitting by designation.

bers and asked him to sign a citation for making excessive noise. Pecina explained to Chambers that the effect of signing the citation was not an admission of guilt; rather, it was merely an acceptance of a ticket. After Chambers still refused to sign the citation, Officer Nolan requested a squad car to transport him, Pecina, and Chambers to a nearby police station.

At the police station, Officer Nolan, Sergeant Matthew Nyholt and Captain James Maher (defendant-appellant) all urged Chambers to sign the citation. When Chambers refused, Captain Maher instructed Nolan to arrest Chambers, make out an arrest report, and inventory Chambers' property. At the time he was taken to the station, Chambers was carrying a battery-powered sound amplifier and a brown vinyl bag containing religious pamphlets, a Bible, an overcoat, and spare batteries for the amplifier. After filling out an inventory form, Officer Nolan told Chambers that he could pick up his property when he was released from custody or he could retrieve it anytime within thirty days. Nolan then checked a box on the inventory form indicating that Chambers would pick up his property.

When Chambers was released from custody, he went to the desk sergeant (Sergeant Nyholt) and asked for his property. Because Captain Maher was responsible for deciding whether property seized at arrest should be released to an arrestee or held for evidence, Sergeant Nyholt had another officer check with Captain Maher to see if it was all right to release Chambers' property. Maher instructed Nyholt to hold Chambers' property as potential evidence in a prosecution for noise pollution. Maher also instructed Nyholt to check a box on the inventory form indicating that the property was to be held. Once Nyholt carried out Maher's instructions, the previous markings on the inventory form should have been "whited-out." They were not. Thus, the inventory form was sent to the "Evidence and Recovered Property" warehouse with inconsistent markings—one box indicated that the property was to be held for evidence and another box indicated that Chambers had been notified to pick up his property. Unfortunately, Officer Nolan did not know that Captain Maher had ordered the property held for evidence. Thus, when the warehouse sent a "tracer" to Nolan—a tracer is a standard form sent to the officer who seized the property—Nolan responded that Chambers had been notified to pick up his property. Due to this mix up, employees at the warehouse were put under the impression that the property had been abandoned and was to be sold or destroyed; accordingly, the warehouse employees had the property destroyed in accordance with normal procedures.

Chambers filed a 42 U.S.C. § 1983 suit against Pecina, Nolan, Nyholt, Maher, and the City of Chicago. The complaint alleged that the defendants violated Chambers' fourth amendment rights by causing the confiscation and destruction of Chambers' sound amplification equipment, vinyl bag, Bible and religious pamphlets. At the close of Chambers' case-in-chief, the court directed a verdict in favor of Pecina. At the close of all the evidence, the jury returned a verdict in favor of the remaining defendants—the city, Nolan, Nyholt, and Maher.

After entering judgment on the jury verdict, the district court granted a judgment notwithstanding the verdict (JNOV) against Captain Maher. Specifically, the court pointed out that the inventory sheet presented to Maher at the time he made his decision to hold the property as evidence described the property as two separate items. One item was described as a "loud speaker"; the other item was described as a "brown vinyl bag containing Bible and pamphlets." The district court reasoned that Maher was justified in detaining Chambers' loud speaker (the amplifier) and the batteries associated with the loud speaker because they "were clearly evidence with regard to the alleged violation." On the other hand, the court reasoned that Maher was liable under § 1983 on the basis of Maher's decision to hold Chambers' remaining property—the vinyl bag, the coat, the Bible and the pamphlets—because those items "had absolutely no relevance to a prosecution for noise pollution," and

therefore, the jury could not have found that Maher reasonably believed he had probable cause to hold the property as evidence.

After the district court refused Maher's motion to reconsider, Maher and Chambers stipulated that Chambers' damages were $4,000. The court entered a judgment in favor of Chambers and against Maher for $4,000, exclusive of fees and costs. Maher now appeals the district court's JNOV.

■ In reviewing a JNOV, we make a *de novo* inquiry into whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion was directed. *Cygnar v. City of Chicago*, 865 F.2d 827, 834 (7th Cir.1989); *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985). In short, a JNOV should only be granted when there can be but one reasonable conclusion as to the verdict. *Brady v. Southern Railway Co.*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Freeman v. Franzen*, 695 F.2d 485 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983).

Before determining whether the district court's JNOV was proper, it is important to clarify that Maher's § 1983 liability is *not* based upon the original seizure of the property or the mistakes that led to the destruction of the property. Chambers does not challenge the legality of Maher's order to arrest Chambers because of Chambers' refusal to sign the noise citation. It is well established that the police can seize and search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station. These inventory searches do not rest on the concept of probable cause; rather, they are based on interests such as removing potentially dangerous instrumentalities from an arrestee and deterring an arrestee from making false claims regarding theft of property. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976);

*United States v. Velarde*, 903 F.2d 1163 (7th Cir.1990); *United States v. Griffith*, 537 F.2d 900 (7th Cir.1976). Once Maher instructed Nolan to arrest Chambers, the original seizure and search of Chambers' property was clearly a proper inventory of that property.

Chambers also does not argue that Maher intended Chambers' property to be destroyed. Nor does Chambers contend that Maher had a reason to believe that Chambers' property would be destroyed before it could get to court for a noise pollution trial. In light of clear precedent holding that negligent conduct is not sufficient to trigger § 1983 liability for deprivation of property, *see e.g., Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), Chambers wisely forgoes an attempt to attach liability on Maher for his role (if any) in the mistakes that led to the destruction of Chambers' property. The appropriate remedy for these mistakes lies with state tort law, not with a § 1983 claim for a violation of the Constitution.

■ The conduct at issue in this case is very narrow. The district court premised its JNOV solely on the ground that a reasonable jury could not find that Maher acted in accordance with the fourth amendment in deciding to hold Chambers' coat, vinyl bag, Bible and religious pamphlets for evidence. We believe that the district court erred.

First, we must disagree with the district court to the extent it believed that Maher made a decision to hold Chambers' coat as evidence. The inventory form presented to Maher listed Chambers' property as two items—a "loud speaker" and a "brown vinyl bag containing Bible and pamphlets." Although the vinyl bag also contained Mr. Chambers' coat, there was no evidence at trial that Maher was made aware of that fact at the time of his decision. Because there was no evidence that Maher knew that Chambers' coat was included with the other items held for evidence, Maher cannot be held liable for a "decision" to hold the coat.

As for the remainder of Chambers' property, the district court instructed the jury

that it was to return a verdict in favor of Maher if it thought Maher had a reasonable basis to believe that the vinyl bag, the pamphlets, and the Bible would have aided in the prosecution of Mr. Chambers for the noise ordinance violation. At trial, Maher explained that in Chambers' trial for noise pollution, he thought that a court "might find ... [the] property informational," that the property would "allow the court to review exactly what Mr. Chambers had and did," and that this property "would allow the court to better understand what [Chambers] was about, what his business was." We believe that this explanation provided sufficient evidence for a jury to reasonably conclude that Maher acted reasonably in deciding to hold the bag, the pamphlets and the Bible for evidence.

In *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967), the Court established that an item of evidence did not have to be contraband or an instrumentality or fruit of a crime in order to be lawfully seized under the fourth amendment. The Court held that "mere evidence" could be seized as long as it would aid in a particular apprehension or conviction of a criminal suspect. In the case of instrumentalities, fruits, and contraband—here, for example, the amplifier—the necessary "nexus" between the item to be seized and a criminal prosecution is automatically established. 387 U.S. at 307, 87 S.Ct. at 1650; *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *see Perlman v. City of Chicago,* 801 F.2d 262 (7th Cir.1986). In the case of "mere evidence," the Court has stated that the "nexus" inquiry is synonymous with a relevancy determination. Thus, mere evidence "need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *New Jersey v. T.L.O.,* 469 U.S. 325, 345, 105 S.Ct. 733, 744-45, 83 L.Ed.2d 720 (1985) (citing Fed.R.Evid. 401).

As a preliminary matter, we note that the city and Mr. Chambers reached a settlement agreement and, therefore, the noise pollution case never went to trial—Chambers agreed to keep his amplifier below a certain volume as long as the city did not bring charges. Thus, we do not have the benefit of seeing whether a court in a noise pollution trial actually would have admitted Chambers' vinyl bag, pamphlets, and Bible into evidence. However, the issue is not whether these items actually would have been entered into evidence; nor is the issue whether we think they would have been admitted into evidence. For JNOV purposes, our only task is to determine whether it was plausible for Maher to believe these items would be helpful as evidence in Chambers' noise pollution case. If it was not, then we would agree with the district court that the jury verdict was unreasonable.

The district court believed that Chambers' vinyl bag, Bible and pamphlets would have no relevance in a future noise pollution proceeding against Chambers. This is certainly a plausible evidentiary ruling. However, it is not the only plausible ruling. Maher does not have to correctly predict whether a judge would find these items to be relevant; rather, Maher's belief that the retained items could play a role in the preparation and presentation of the case against Chambers need only be a reasonable (as opposed to a correct) belief.

While these items were not necessary to prove facts that bear directly on Chambers' guilt or innocence, it was not unreasonable for the jury to believe that Maher reasonably determined that all of the items connected with the preaching that caused the noise pollution might be used in the prosecution of this case. For instance, a court may have allowed the city to use these items to help set the scene at the time of the complaint for excessive noise. Likewise, it is conceivable that a court would allow the city to use these items to help show that Chambers' excessive noise was part of an ongoing operation, not a brief occurrence. Because it was plausible for the jury to conclude that Maher reasonably believed that Chambers' vinyl bag, pamphlets, and Bible would constitute relevant evidence in a prosecution for noise pollu-

tion, we believe the district court erred in granting a JNOV against Maher.

There is one final point for us to briefly address: Maher argues that even if we were to find that he violated Chambers' fourth amendment rights, he would nevertheless be immune from damages under the doctrine of qualified immunity. Maher raised the same argument before the district court and it was rejected. Having found that the jury was reasonable in finding that Maher did not violate Chambers' fourth amendment rights, we find no occasion to address Maher's immunity argument in this appeal.

For the foregoing reasons, the district court's entry of JNOV is REVERSED and the jury verdict is reinstated.