Simeon BRAGADO, Jr., individually and as independent Administrator of the Estate of Judith Bragado, Deceased, Plaintiff,

v.

CITY OF ZION/POLICE DEPARTMENT, an Illinois Municipal Corporation; Sergeant Morrison, individually and in his official capacity as a sergeant with the City of Zion/Police Department; Robert Levanowich, individually and in his official capacity as a police officer with the City of Zion/Police Department; Don Williamson, individually and in his official capacity as a police officer with the City of Zion/Police Department; and Cheryl Cosey, individually and in her official capacity with the City of Zion/Police Department, Defendants.

No. 89 C 2409.

United States District Court,
N.D. Illinois, E.D.

Dec. 7, 1993.

James Edward Pancratz, James E. Pancratz, Ltd., Bradley Daniel Birge, Chicago, IL, for plaintiff Simeon Bragado, Jr.

Gregory E. Rogus, Paul E. Wojcicki, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for defendant Robert Levanowich.

Robert Edward O'Malley, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for defendant Cheryl Cosey.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are post-trial motions of plaintiff Simeon Bragado, Jr., individually and as independent Administrator of the Estate of Judith Bragado, Deceased ("plaintiff") for a new trial as to damages only and additur as to funeral expenses under the § 1983 civil rights action, and of defendants City of Zion/Police Department ("City of Zion") and Cheryl Cosey ("Cosey") (collectively "defen-

dants") for judgment notwithstanding the verdict. For the following reasons, the parties' post-trial motions are denied.

## BACKGROUND

This case emerged from the suicide of Judith Bragado ("Bragado") in the early morning hours of March 31, 1988 while she was being held in a jail cell at the City of Zion police station. Plaintiff filed a personal injury action asserting federal and state claims. Count I of the action ("federal claim") alleged that Bragado's rights under the Eighth and Fourteenth Amendments, actionable under 42 U.S.C. § 1983, were violated as a result of defendants' failure to prevent Bragado's suicide, to provide Bragado with prompt medical care and self-protection, and to reasonably monitor Bragado while in defendants' custody. Counts II and III ("state claims") raised claims respectively under the Illinois Survival Act, 755 ILCS 5/27–6 (1993), and the Illinois Wrongful Death Act, 740 ILCS 180/1, 180/2 (1983).

The matter was tried before a six-member jury from September 14, 1993 through September 28, 1993. At the conclusion of plaintiff's case, defendants moved for a directed verdict. The court denied the motion as to City of Zion and Cosey, but granted the motion as to the remaining defendants Sergeant Morrison, Robert Levanowich, and Don Williamson. City of Zion and Cosey renewed their motion for judgment as a matter of law at the close of all the evidence. The court denied the motion. The jury returned a verdict in favor of plaintiff and against City of Zion as to Counts II and III and Cosey as to Counts I, II and III. The jury assessed the total damages in the amount of $237,117.60.

The parties filed timely post-trial motions. Plaintiff filed a motion for a new trial as to damages only and for additur to recover additional $2,112.60 for funeral expenses under the federal claim.[1] Defendants filed a motion for judgment notwithstanding the verdict ("j.n.o.v.") with respect to all claims.

---

1. Plaintiff's post-trial motion does not raise any issue as to the jury's verdict and its assessment of damages under the state claims. Furthermore, plaintiff does not argue that the amount of damage or funeral expenses awarded by the jury were inadequate.

The court will first address defendants' motion for j.n.o.v.

## DISCUSSION

 In deciding whether to grant defendants' motion for j.n.o.v., the court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir. Nov. 24, 1993) (quoting *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir.1992). Conflicting testimony presented at trial that is unfavorable to the prevailing party must be disregarded. *King v. Fairman*, 997 F.2d 259, 261 (7th Cir.1993). Further, the court will neither weigh the evidence nor reevaluate the credibility of witnesses. *McNabola*, 10 F.3d at 515. Those tasks are within the exclusive domain of the jury. A motion for j.n.o.v. should be granted only when there can be but one conclusion from the trial evidence. *Chambers v. Maher*, 915 F.2d 1141, 1143 (7th Cir.1990), *cert. denied*, 499 U.S. 910, 111 S.Ct. 1116, 113 L.Ed.2d 225 (1991).

Plaintiff's federal claim was governed by the "deliberate indifference" standard. As to the federal claim, the jury determined that Cosey was guilty of acting in deliberate indifference to the serious needs of Bragado in monitoring her during Cosey's shift at the City of Zion police station on March 31, 1988, and that her indifference proximately caused Bragado's suicidal death.

In instructing the jury on the definition of "deliberate indifference," this court provided the following instruction based on *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991):

> [Cosey] can be held liable for depriving [Bragado] of her life without due process only if [Cosey] was deliberately indifferent to [Bragado's] serious medical needs. The term "deliberate indifference" means intentional or criminally reckless conduct.

The term "criminally reckless conduct" means conduct that is reckless in a criminal sense, that is, conduct that reflects complete indifference to risk, when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death....

Neither negligence nor even gross negligence violates due process. Therefore, [Cosey] cannot be held liable for depriving [Bragado] of her life without due process if [Cosey's] conduct does not go beyond negligence or gross negligence.

 Cosey argues that the trial evidence fails to support the jury's finding of "deliberate indifference" within the instructed meaning. In support, Cosey asserts that she did not know Bragado prior to March 30, 1988, that she monitored Bragado through the use of the jail's audio and video monitoring system, that Cosey summoned a patrol officer to physically check on Bragado at 4:42 a.m., that Bragado was alive as of 6:28 a.m. on March 31, 1988, and that Cosey was on duty alone in the radio room for five hours.[2]

It is conceivable that those facts may support Cosey's defense that she was not deliberately indifferent to Bragado's safety. However, there were other facts established at trial which support the jury's ultimate determination. The trial evidence showed that the danger to Bragado's health and life was her suicidal tendencies. The evidence further revealed that Cosey failed to comply with the established jail regulations and standards which provided guidance on the required precautionary measures to prevent possible suicides. Immediately after Cosey reported for her shift, she gained personal knowledge through observation and from other police officers that Bragado was intoxicated and medicated when she was brought into custody, that Bragado was physically and mentally unstable, that she had written a suicide note, that she had lacerations on her wrist, and that Bragado evinced suicidal tendencies. Moreover, during Cosey's shift, she heard Bragado yell as many as twelve times

---

2. Defendants in filing their motion for j.n.o.v., did not submit or cite to the trial transcript. Thus, the court relies on the representations of the parties as to the evidence presented at trial and the court's own understanding of the evidence.

that she was going to commit suicide. Even under these circumstances, Cosey did not personally monitor Bragado in the jail cell to check on Bragado's status.

· The jury may have discounted the evidence of audio and video monitoring. It would have been reasonable for the jury to conclude that the audio and video monitoring did not provide Bragado the required protection. The audio system merely monitored the sounds emanating from the holding cell. The video system was likewise limited in its precautionary value because the inside of the cell or Bragado's body was not visible on the video monitor. Thus, the jury may have found these systems unacceptable alternatives to the mandated personal inspection of Bragado. ·

Furthermore, the evidence unequivocally established that Cosey violated the jail regulations of the Zion Police Department and the Illinois Municipal Jail and Lockup Standards. Pursuant to the established jail regulations and standards, Cosey was required to conduct periodic personal inspections of Bragado, but failed to comply with them. The totality of the circumstances and facts disclosed at trial, coupled with the violation of the applicable jail regulations and standards, support the jury's verdict. *See Hall v. Ryan,* 957 F.2d 402, 405 (7th Cir.1992); *McGill v. Duckworth,* 944 F.2d 344, 347–48 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992); *Holmes v. Sheahan,* 930 F.2d 1196, 1199–1200 (7th Cir.),· *cert. denied,* —— U.S. ——, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991).

■ The state claims were governed by the "wilful and wanton" standard. With respect to the state claims, ·the jury found that Cosey and City of Zion, by and through its authorized employee and agent Cosey,· were guilty of wilful and wanton misconduct in monitoring Bragado and that their conduct proximately caused Bragado's suicidal death. Under Illinois law, whether certain conduct is "wilful and wanton" is a question of fact for the jury unless the court can decide as a matter of law that a plaintiff failed to adduce

sufficient evidence on the issue.[3] *Brown v. Chicago Park Dist.,* 220 Ill.App.3d 940, 163 Ill.Dec. 404, 407, 581 N.E.2d 355, 358 (1991).

The definition of "wilful and wanton" is essentially the same as the definition of "deliberate indifference" under the federal constitutional law. The term "wilful and wanton" is defined in the Illinois Local Governmental Employees Tort Immunity Act as "a course of action which shows an actual or deliberate intention to cause harm or· which, if not intentional, shows an utter indifference to or conscious disregard ·for the safety of others...." 745 ILCS 10/1–210. The Supreme Court of Illinois has further defined "wilful and wanton" conduct as being "intentional or ... committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through reckless, or carelessness when it could have been discovered by ordinary care." *Lynch v. Board of Education,* 82 Ill.2d 415, 45 Ill.Dec. 96, 412 N.E.2d 447, 457 (1980). In the instant action, the evidence produced at trial was sufficient to support the jury's finding that defendants were wilful and wanton in failing to provide the required precautionary inspection of Bragado.

Defendants' in their motion for j.n.o.v. as to the state claims focus much on the fact that Bragado's level of intoxication, .1, by itself did not pose any danger to her life or health, that the ·medical testimony established that the post-mortem examination failed to show presence of fiorinal or any other barbiturate in Bragado's body, and that there was no medical evidence to show that ingestion of Indural created health risks to Bragado, that "the scratches on Bragado's wrists were superficial," and that plaintiff's medical evidence demonstrated that Bragado was not experiencing any health crisis. Def.'s Mot. at 6. These factors do not alter the evidence the jury heard regarding Cosey's obligations under the relevant regulations and standards on prisoner safety or the

---

**3.** The court on April 6, 1992, denied defendants' motion for summary judgment and concluded that plaintiff had proffered adequate facts to create a material issue of fact regarding the "wilful and wanton" issue. *Bragado v. City of Zion,* 788 F.Supp. 366, 372–3 (N.D.Ill.1992).

circumstances Cosey confronted during her shift.

It may be true that the level of intoxication and the wrist injuries by themselves do not amount to serious risk to Bragado's health or life. Nonetheless, the evidence of Cosey's knowledge regarding the threat of suicide, the jail safety regulations and standards, and Bragado's physical and mental condition at the time of her custody, support the jury's finding. Accordingly, defendants' motion for j.n.o.v. is denied and the court will not disturb the jury's verdict.

Having denied defendants' motion for j.n.o.v., the court will turn to plaintiff's post-trial motion. Plaintiff's motion seeks a new trial as to damages only and additur as to the funeral expenses under the federal claim. Plaintiff raises no issue as to damages the jury awarded under the state claims including the amount of funeral expenses plaintiff recovered under those claims. The jury assessed damages in the amount of $5,000 under the Illinois Survival Act and $232,113.60 under the Illinois Wrongful Death Act: $230,000 for loss of society and $2,113.60 for funeral expenses. Under the federal claim, the jury assessed damages in the amount of $1 for loss of Bragado's enjoyment of life, $1 for loss of society, and $1 for funeral expenses. The jury awarded no punitive damages.

 Plaintiff's motion for new trial on the federal claim damages is no more than a request for double recovery on the basis that plaintiff asserted two theories of liability. A plaintiff may pursue any and all viable theories of liability to recover compensation for an injury; however, the multiplicity of theories do not warrant multiple damages for a single injury. *Gilmere v. City of Atlanta,* 864 F.2d 734, 736 n. 2 (11th Cir.1989). A plaintiff seeking compensation for an injury under multiple theories of recovery may only recover once. *Gentile v. County of Suffolk,* 926 F.2d 142, 153 (2d Cir.1991); *Kipnis v. Meltzer,* 253 Ill.App.3d 67, 68, 192 Ill.Dec. 360, 361, 625 N.E.2d 320, 321 (1993) (plaintiff may only have one satisfaction for an injury regardless of multiple theories of recovery sought for the injury). Duplication of recovery occurs by compensating a single injury

under two different theories of recovery. *Gentile,* 926 F.2d at 154.

 In the case at bar, the elements of damages under the federal claim and state claims are identical except for the loss of enjoyment of life and punitive damages which are recoverable under the federal claim only. Further, the factual allegations under the federal and state claims are identical. Plaintiff has recovered damages for the loss of society caused by the death of Bragado under the Wrongful Death Act, and plaintiff does not dispute the reasonableness of the amount. Granting a new trial in order to determine the damages for loss of society under the federal claims will vitiate the well settled public policy against double recovery for a single injury. There is no evidence to suggest that the loss of society under the federal claim was caused by an event other than Bragado's suicide. It was within the sound discretion of the jury to apportion the damages between the federal and state claims. *Gentile,* 926 F.2d at 154.

The risk of double recovery is more prevalent with respect to plaintiff's request for additur as to the funeral expenses under the federal claim. Plaintiff in his motion represents that the total amount of funeral expense is "$2,113.60." Pltf.'s Mot. at 4. It is undisputed that the jury awarded the Estate of Bragado the amount of $2,113.60 for funeral expenses. Additionally, the jury awarded $1 for funeral expenses under the federal claim. Thus, the total amount of damages the jury awarded for funeral expenses is $2,114.40: a $1 higher than the amount requested. If the court grants plaintiff's motion for additur, in the amount of $2,112.60, the total amount of damages for funeral expenses would be double the actual expense: $4,227.20.

Further, the jury's award of $1 for loss of enjoyment of life and refusal to award punitive damages are consistent with the evidence and cannot be deemed unreasonable. First, the subject matter of the case involved suicide. It was reasonable for the jury to determine that Bragado's loss of enjoyment of life amounted to almost nothing. Plaintiff

relies on the evidence of Bragado's personal and employment history. However, the jury heard the evidence at trial and it was not unreasonable for the jury to give no weight to the damage evidence in assessing the loss of enjoyment of life, other than the act of suicide itself. Second, the jury's decision not to award any punitive damages is not unreasonable. During the closing argument, plaintiff's counsel himself requested a mere $5,000 for punitive damages. Given the value placed by plaintiff on damages to function as a deterrent factor, the jury's zero punitive damages cannot be deemed unreasonable. Therefore, a new trial on the damages under the federal claim is not only inappropriate, it would result in double recovery.

In sum, the court finds that the jury's verdict and award of damages in the instant case is supported by the evidence and is reasonable. The amount of damages and the jury's conscious effort to compensate plaintiff fully, but only once, also demonstrates their ability to reasonably view the evidence. Accordingly, the post-trial motions of the parties are denied.

### CONCLUSION

For the foregoing reasons, defendants' motion for judgment notwithstanding the verdict is denied. Additionally, plaintiff's motion for new trial and for additur is also denied.

IT IS SO ORDERED.