**LaSALLE BANK LAKE VIEW, an Illinois banking corporation, Plaintiff,**

v.

**Ellen SEGUBAN, Rafael Seguban, and John Doe, Defendants.**

**No. 93 C 5949.**

United States District Court, N.D. Illinois, Eastern Division.

May 11, 1994.

Barry Alan Miller, Michael L. Shakman, Edward W. Feldman and Bernard A. Schlifke, Miller, Shakman, Hamilton, Kurtzon & Shlifke, Chicago, IL, for plaintiff.

Brent Douglas Stratton, Tuite, Stratton & Menaker and Patrick Alan Tuite, Arnstein & Lehr, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of plaintiff LaSalle Bank Lake View ("Bank") for summary judgment. For the following reasons, the motion is granted.

### FACTS

The Bank has filed suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, with pendent state claims for breach of fiduciary duty, conversion, and fraud. The Bank brings this action against defendant Ellen Seguban ("E. Seguban"), a former Assistant Teller Manager of the Bank, based on the Bank's discovery of a series of fraudulent transactions which divested the Bank of $940,000 during a twelve-year period between 1981 and 1993. Also named as a defendant is Rafael Seguban ("R. Seguban"), E. Seguban's husband, who, according to the Bank, is liable based on his acceptance and use of funds which he knew were obtained illegally from the Bank.

According to the Bank, E. Seguban was able to embezzle its funds by way of fictitiously balancing credit and debit transactions so that unauthorized money withdrawals from the vault could not be detected. Each time a bank teller receives cash from the Bank's vault, the teller and the vault supervisor execute corresponding credit and debit receipts known as "teller tickets." At the end of each day, the teller tickets are submitted in order for the Bank to enter and register those credit/debit transactions into its record. After approximately three days, if the credit and debit receipts do not balance, the Bank's internal security controls are triggered and the unmatched transactions are investigated. The Bank alleges that in September 1993 it discovered a discrepancy in its teller tickets which led it to investigate the transactions indicated on those tickets.

Upon questioning by the Bank, E. Seguban admitted to disguising fraudulent transactions by executing false teller tickets approximately every three days over the twelve-year period. E. Seguban signed a statement to the effect that she did so in order to conceal a fraudulent transaction made by a former bank manager, identified only as John Doe ("Doe"). E. Seguban refused to provide the true identity of Doe. E. Seguban also confirmed that she had prepared the false teller tickets which triggered the Bank's internal investigation.

The Bank's investigation revealed that E. Seguban's story about the former bank manager was false. The Bank's investigation further revealed that E. Seguban diverted increasing amounts of money through each fraudulent transaction totalling $940,000.

According to the Bank's allegations, R. Seguban aided and abetted E. Seguban's embezzlement scheme. R. Seguban knew that his wife was embezzling funds from the Bank over many years and that those funds were used to pay for a family lifestyle far exceeding the Segubans' combined annual income of approximately $50,000. A federal criminal investigation is currently proceeding against both E. Seguban and R. Seguban (collectively "Segubans").

In response to the Bank's discovery requests, Segubans asserted their Fifth Amendment privilege against self-incrimination and refused to comply with those requests. As a result, the Segubans refused to participate in routine discovery, preventing the Bank from learning material facts and those facts which may lead to material evidence.

The Bank asserts that E. Seguban violated 18 U.S.C. § 1344 by knowingly executing a scheme (1) to defraud a financial institution, or (2) to procure funds under the custody of a financial institution by means of fraudulent pretenses, representations, or promises. The Bank, therefore, argues that the conduct constitutes "racketeering activity" as defined under 18 U.S.C. § 1961. Additionally, the Bank contends that E. Seguban repeatedly violated 18 U.S.C. § 1344 over approximately twelve years and thereby engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961. E. Seguban is a "person" within the meaning of 18 U.S.C. § 1961. Furthermore, the Bank asserts that E. Seguban violated 18 U.S.C. § 1962(c) through her employment with the Bank because she conducted the Bank's affairs through racketeering activity. The Bank

claims that this conduct injured the Bank's business or property by embezzling at least $940,000 of its funds in violation of 18 U.S.C. § 1962(c).

■ As a result of these RICO violations, the Bank requests an award of treble damages and attorneys' fees from E. Seguban. Furthermore, the Bank asserts that the Segubans conspired to violate 18 U.S.C.1962(c) in violation of 18 U.S.C. § 1962(d) and are, therefore, jointly and severally liable to the Bank for treble damages and attorney's fees under 18 U.S.C. § 1964(c).[1]

As to the state claims, the Bank asserts that E. Seguban breached the fiduciary duties of loyalty, honesty, and fair dealing she owed to the Bank. The Bank claims that R. Seguban and Doe knew of, encouraged, and solicited her embezzlement of the funds. Therefore, according to the Bank, they are jointly and severally liable. Furthermore, the Bank asserts claims for conversion and fraud against the Segubans.

### DISCUSSION

■ In a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992). In reviewing the submissions on a motion for summary judgment, the court should neither ignore genuine issues of material fact nor strain to find such issues where none exist. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir.1972). Nonetheless, a mere scintilla of evidence is insufficient to withstand a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Furthermore, to preclude summary judgment, the disputed facts must be substantial enough to affect the outcome of the trial. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992). They must be such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson*

---

**1.** The Bank in its motion for summary judgment requests the court to enter summary judgment in its favor and a judgment in the amount of $940,-000 trebled on each of its RICO counts and in the amount of $940,000 on each of its state claims. The court will not address the issue of the judgment amount, but defer the issue for

further proceeding. The Bank must, however, realize that multiple theories of recovery will not produce multiple recovery. A plaintiff seeking redress for a single injury under multiple theories of recovery may only recover once. *Bragado v. City of Zion/Police Dept.*, 839 F.Supp. 551, 555 (N.D.Ill.1993).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The threshold issue is whether the parties have complied with Rule 12 of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules").[2] The Bank, as the moving party in this motion, has filed a statement of material facts pursuant to Local Rule 12(m).

As support for its 12(m) statement, the Bank has provided the affidavits of its Assistant Vice President, Security and Assistant Vice President, and Assistant Controller. In addition, the Bank has included a copy of E. Seguban's statement admitting that she disguised fraudulent transactions. The Bank has also submitted various financial documents, used by the Segubans in obtaining financing, as well as a sufficient sample of the voluminous teller transfer tickets involved in the diversion of funds.

In submitting this evidence as support for its 12(m) statement, the Bank emphasizes the assertion made by both Segubans of the Fifth Amendment privilege against self-incrimination. Consistent with this assertion, the Segubans have chosen not to participate in discovery regarding the material issues of the Bank's allegations. There is nothing out of the ordinary about the discovery requests propounded on the Segubans. The requests are routine discovery requests employed in civil actions which are permitted under the applicable Rules of the Federal Civil Procedure. Yet, the Segubans elected to raise the Fifth Amendment privilege and not respond to the discovery requests. As a result, the Bank has not had access to evidence which may be in the Segubans' control that could support its 12(m) statements. However, because the Bank has provided that evidence which is within its control, the Bank has complied with Local Rule 12(m).

The Segubans, however, have failed to follow Local Rule 12(n) in responding to the Banks' summary judgment motion. Although both of the Segubans have filed separate responses to the Bank's motion for sum-mary judgment, neither of the Segubans has filed a 12(n) statement of contested and additional facts. Instead, in their responses to the Bank's motion for summary judgment, the Segubans generally assert that the Bank's evidence is insufficient to warrant the granting of summary judgment.

■ Where the moving party's submissions demonstrate that there is no material factual issue, the nonmoving party must set forth specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In the instant case, however, the Segubans have not set forth any specific facts to establish a genuine issue of a material fact for trial. Rather, they assert their Fifth Amendment privilege against self-incrimination.

■ While it is true that the Segubans' Fifth Amendment silence alone could not be used as a basis for a judgment against them, *National Acceptance Co. v. Bathalter*, 705 F.2d 924, 932 (7th Cir.1983), the Fifth Amendment privilege does not prohibit the court from drawing negative inferences against parties who refuse to respond in civil actions. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); *see also Phoenix Mut. Life Ins. Co. v. Mitchell*, No. 90 C 5251, 1992 WL 390907, at *2 (N.D.Ill. Dec. 17, 1992). In a civil case, where there is other evidence of the facts inferred, the drawing of adverse inferences from privileged silence does not make the assertion of privilege so costly as to amount to compulsion. *National Acceptance*, 705 F.2d at 930.

■ Because the Bank has presented substantial evidence of its allegations against the Segubans, the court may draw negative inferences from the Segubans' assertion of the Fifth Amendment privilege. The Segubans failed to file a 12(n) statement of controverted and additional facts and failed to refer to any affidavits, portions of the record, or other material demonstrating any material factual controversy. Therefore, pursuant to

---

**2.** The motion for summary judgement was filed prior to the effective date, April 4, 1994, of the revised Local Rules 12(M) and 12(N). Thus, the court employs the unrevised Local Rules 12(m) and 12(n) for purposes of this motion.

Local Rule 12(n), the facts set forth in the Bank's 12(m) statement are deemed admitted. *See Knox v. McGinnis,* 998 F.2d 1405, 1408 n. 8 (7th Cir.1993); *Ness v. Ford Motor Co.,* 835 F.Supp. 453, 455 n. 2 (N.D.Ill.1993).

Moreover, in light of the facts adduced by the Bank in conjunction with the permissible negative inferences drawn from the Segubans' assertion of their Fifth Amendment privilege, no reasonable trier of fact could find in favor of either of the Segubans. Thus, there is no reason for this case to proceed to trial. The undisputed facts demonstrate that the Bank is entitled to a judgment as a matter of law on its claims under RICO and pendent state claims.

## *CONCLUSION*

For the foregoing reasons, the Bank's motion for summary judgment is granted as to claims against E. Seguban and R. Seguban.

IT IS SO ORDERED.